UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAYMOND GAMBOA,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY, *et al.*,<br><br>Defendants. | CASE NO. C06-1034RSM<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion for Partial Summary Judgment." (Dkt. #34). Defendants argue that the majority of the claims asserted by Plaintiff in his civil rights action should be dismissed. Specifically, Defendants seek dismissal of the following allegations: (1) all claims for violation of the First Amendment right to free speech; (2) the claim for violation of the Fourth Amendment prohibition against unreasonable seizure; (3) all claims for violation of Due Process rights; (4) the claim for violation of the Fourteenth Amendment right to personal security; (5) the claims for municipal liability against the City of Burien and King County; and (6) the claim for negligence.

The primary argument Defendants advance in support of their motion is that the arrest that gave rise to Plaintiff's lawsuit before this Court has already been deemed proper in an underlying state court proceeding. Moreover, Defendants argue that Plaintiff's 42 U.S.C. § 1983 claims should be dismissed because granting Plaintiff any form of relief would render the state court's judgment invalid. Defendants also argue that the doctrine of collateral estoppel precludes Plaintiff from raising his First Amendment claims.

Plaintiff essentially responds that summary judgment is inappropriate in light of the

MEMORANDUM ORDER
PAGE - 1

conflicting factual accounts of the incident at issue.  Furthermore, Plaintiff argues that he is not precluded from bringing a civil rights complaint in this Court simply because his arrest was previously determined to be proper in state court.  Plaintiff also argues that collateral estoppel does not apply to his First Amendment claim because there is new evidence that precludes the application of the doctrine.

For the reasons set forth below, the Court GRANTS IN PART "Defendants' Motion for Partial Summary Judgment."

## II.  DISCUSSION

### A.  Background

The instant lawsuit arises from a series of events that occurred on July 22, 2004, when Plaintiff Raymond Gamboa ("Plaintiff") was involved in a traffic stop that eventually resulted in a forceful arrest.  The facts surrounding the stop and the arrest are largely in dispute.[1]

On the evening of July 22, 2004, Plaintiff was traveling northbound on 1st Avenue South, in Seattle, Washington.  Defendant police officer Jason Houck ("Officer Houck"), who was riding in a fully marked Burien police car, noticed Plaintiff was driving erratically, and initiated his emergency lights to stop Plaintiff.  Plaintiff did not immediately stop, and according to Officer Houck, Plaintiff traveled approximately seven and half blocks after Officer Houck had activated his emergency lights before he finally pulled over.  Plaintiff alleges that he was driving lawfully, and that he did not immediately stop because there was no clear area for him to pull over. Furthermore, Plaintiff claims that there was a mechanical problem with his car.  As a result, Plaintiff indicates that after he stopped, he exited his vehicle to explain to Officer Houck the reason for his erratic driving.  Officer Houck informed Plaintiff to place his hands on the car, and noted that Plaintiff had physical symptoms that were consistent with driving under the influence of intoxicants.  Officer Houck subsequently placed Plaintiff under arrest.  Plaintiff claims that he had not been drinking that night.

---

[1] To the extent that there is a difference between the parties' version of events, the Court views the facts most favorably to the non-moving party.

MEMORANDUM ORDER
PAGE - 2

Officer Houck then placed Plaintiff in the rear of his patrol car. Officer Houck alleges that Plaintiff grew increasingly hostile and began kicking the rear windows of the patrol car. Officer Houck subsequently used pepper spray to calm Plaintiff down. Shortly thereafter, Plaintiff proceeded to kick the rear windows of the patrol car again, and eventually shattered the rear passenger window with his feet.[2] Officer Houck then employed his taser gun at least three times to calm Plaintiff down. Officer Houck indicates that he had to use the taser gun more than once because Plaintiff continued to be hostile after the initial applications were applied. Plaintiff was finally subdued, and it is undisputed that first aid personnel arrived on the scene to provide medical attention to Plaintiff. Plaintiff was then transported to a police precinct in Burien, Washington. At the precinct, Plaintiff alleges that he was not given the opportunity to take a breath test. Plaintiff also alleges that he was not given any forms to sign. Eventually, Plaintiff was transported to the King County Correctional Facility. During processing, marijuana was discovered on his person.

As a result of these events, Plaintiff was charged with four criminal offenses: (1) Malicious Mischief in the Second Degree; (2) Failure to Obey a Police Officer; (3) Violation of the Uniform Controlled Substance Act, Possession of Forty Grams or Less of Marijuana; and (4) Driving While Under the Influence of Intoxicants ("DUI"). Following a jury trial that concluded on January 19, 2005 in King County Superior Court, Plaintiff was found guilty of all of the charges with the exception of the DUI charge. (Dkt. #34, Decl. of Kinerk, Ex. 1). Plaintiff was sentenced on March 31, 2005, and did not appeal his criminal convictions.

More than one year later, Plaintiff brought the instant civil rights lawsuit in this Court on July 21, 2006. (Dkt. #1). Plaintiff named King County, the City of Burien, and Officer Houck as Defendants. In his amended complaint, Plaintiff brings several claims for relief pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendants violated: (1) his First Amendment right to free speech; (2) the Fourth Amendment prohibition against

---

[2] Plaintiff does not dispute that he shattered the window. He claims that it was imperative for him to do this because he feared for his life and was trying to get some air. (Dkt. #45 at 4).

MEMORANDUM ORDER
PAGE - 3

unreasonable seizures; (3) the Fourth Amendment prohibition against the use of unreasonable force; (4) the Fourteenth Amendment due process clause; and (5) the Fourteenth Amendment right to personal security. Plaintiff further alleges that Defendants King County and the City of Burien have municipal liability for utilizing policies, practices, and customs in violation of the First, Fourth, and Fourteenth Amendments. Plaintiff also brings the state law claim of assault and battery, and the state law claim of negligence. Lastly, Plaintiff claims that Defendants violated his due process rights and free speech rights under the Washington State Constitution.

Defendants now bring the instant motion for partial summary judgment. Defendants seek dismissal of all of Plaintiff's claims with the exception of Plaintiff's unreasonable force claim under the Fourth Amendment, and Plaintiff's state law assault and battery claim.

**B. Standard of Review on Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore,

MEMORANDUM ORDER
PAGE - 4

conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F. 2d 665, 667 (9th Cir. 1980).

### C. Plaintiff's 42 U.S.C. § 1983 Claims

The Court now turns to Plaintiff's 42 U.S.C. § 1983 claims. To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right. 42 U.S.C. § 1983; *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citing *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989)). A person deprives another of a constitutional right where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act [which that person] is legally required to do that causes the deprivation of which [the] complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

Here, although Plaintiff only identifies 42 U.S.C. § 1983 as a basis for jurisdiction, the Court construes each cause of action in which a federal constitutional right is asserted by Plaintiff as a cause of action under 42 U.S.C. § 1983. Therefore each claim wherein Plaintiff incorporates either the First, Fourth, or Fourteenth Amendments, with the exception of Plaintiff's claims for municipal liability against King County and the City of Burien shall be discussed here. The Court addresses each claim below.

#### 1. Plaintiff's First Amendment Claim

It is well-established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Houston v. Hill*, 482 U.S. 451, 461 (1987); *see also Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) ("Speech is often provocative and challenging . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."). "The freedom of individuals [to verbally]

MEMORANDUM ORDER
PAGE - 5

1    oppose or challenge police action without thereby risking arrest is one of the principal

2    characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63.

3    Simply put, "criticism of the police is not a crime." *Duran v. City of Douglas*, 904 F.2d 1372,

4    1377 (9th Cir. 1990) (citation omitted).

5          In the context of a § 1983 claim, the First Amendment protects individuals from

6    retaliatory conduct from the police.[3] To establish a First Amendment violation, a plaintiff must

7    show that a defendant "by his actions . . . deterred or chilled the plaintiff's political speech and

8    such deterrence was a substantial or motivating factor in the defendant's conduct." *Mendocino*

9    *Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1990). This standard only

10   requires a demonstration that an officer intended to interfere with an individual's First

11   Amendment rights. *Id.*

12         Police officers are, however, entitled to qualified immunity for their actions. Qualified

13   immunity shields government officials, acting within one of their discretionary functions, from

14   civil liability as long as their conduct "does not violate clearly established constitutional rights

15   of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

16   (1982). The determination of qualified immunity necessitates an inquiry into whether a

17   reasonable officer could have believed his particular conduct at issue was lawful under the

18   circumstances. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir. 1991). Furthermore, an

19   officer is entitled to qualified immunity if the seizure of a plaintiff is supported by probable

20   cause. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006) (finding that even

21   if an officer's motivation for seizing personal property of the plaintiff was to retaliate for

22   plaintiff's exercise of his First Amendment rights, the officer did not violate clearly established

23   law because probable cause existed for the search).

24         In the instant case, the issue of probable cause has already been resolved n the

---

[3] While Plaintiff does not expressly characterize his First Amendment claim as a retaliatory claim in his amended complaint, Plaintiff emphasizes in his response that Officer Houck retaliated against Plaintiff for exercising his First Amendment right to criticize the police. (Dkt. #36 at 4). Therefore the Court construes Plaintiff's First Amendment claim as a retaliatory claim.

MEMORANDUM ORDER
PAGE - 6

underlying state court proceeding. Following Plaintiff's CrR 3.5 pretrial hearing in King County Superior Court to determine the validity of Officer Houck's actions, the trial judge ruled that Officer Houck possessed the requisite probable cause to stop and detain Plaintiff. (Dkt. #34, Decl. of Kinerk, Ex. 4). As a result, this Court need not determine whether Officer Houck possessed the requisite probable cause to arrest Plaintiff. Officer Houck's conduct was already deemed lawful and he was entitled to carry out his duties in arresting Plaintiff. Thus, it is clear that Officer Houck is entitled to qualified immunity in the instant case and Plaintiff's First Amendment claims under § 1983 shall be dismissed.

### 2. Plaintiff's Fourth Amendment Unreasonable Seizure Claim

The Fourth Amendment protects individuals from unreasonable seizures. "Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). The Fourth Amendment requires that the seizure be "reasonable." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Police may not detain a person "even momentarily without reasonable, objective grounds for doing so." *Florida v. Royer*, 460 U.S. 491, 498 (1983). The Ninth Circuit Court of Appeals has explained that, under *Terry*, the length and scope of a detention must be "'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *United States v. Luckett*, 484 F.2d 89, 90 (9th Cir. 1973) (citation omitted). "This standard permits a police officer to detain an individual stopped for [a pedestrian traffic infraction] only [for] the time necessary to obtain satisfactory identification from the violator and to execute a traffic citation." *Id.* at 91.

Here, Plaintiff argues that he was unreasonably seized pursuant to the Fourth Amendment because Officer Houck detained Plaintiff without probable cause. However, Plaintiff completely ignores the rule of law set forth in *Heck v. Humphrey*. 512 U.S. 477 (1994). In that case, the Supreme Court clearly established that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a sentence invalid, a § 1983 plaintiff *must prove that the conviction or sentence has been reversed on direct appeal*." *Heck*

MEMORANDUM ORDER
PAGE - 7

*v. Humphrey*, 512 U.S. 477, 486-87 (1994) (emphasis added).[4]  "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487 (emphasis in original).  In other words, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action *must be dismissed*." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (emphasis added).  Indeed, the Supreme Court delineated a clear example of an invalid § 1983 claim:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. []  He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.  In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.  Regardless of the state law concerning res judicata, [] the § 1983 action will not lie.

*Heck*, 512 U.S. at 487, n.6 (emphasis in original).

A § 1983 action should therefore only proceed "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." *Id.* at 487 (emphasis in original).[5]  The purpose of this requirement is to avoid parallel litigation of probable cause and guilt. *Id.* at 485.  It also prevents the claimant from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against creating two conflicting resolutions arising from the same transaction. *Id.*

In this case, Plaintiff's Fourth Amendment unreasonable seizure claim falls squarely within the parameters of *Heck* and its progeny.  As established above, the trial judge ruled that

---

[4] The Court notes that *Heck* does not necessarily bar a plaintiff's § 1983 excessive force claim, or a plaintiff's § 1983 first amendment claim, because these type of claims do not necessarily imply the invalidity of a plaintiff's conviction or sentence. *See Guerrero*, 442 F.3d at 703; *Pittman v. Tucker*, 213 Fed. Appx. 867, 869 (11th Cir. 2007).

[5] It is unequivocally clear that the rule of law set forth in *Heck* has been followed in the Ninth Circuit as well. *See Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Osborne v. District Attorney's Office for Third Judicial Dist.*, 423 F.3d 1050, 1053 (9th Cir. 2005); *McQuillon v. Schwarzenegger*, 369 F.3d 1091, 1097 (9th Cir. 2004); *Cunningham v. Gates*, 312 F.3d 1148, 1153 (9th Cir. 2002).

MEMORANDUM ORDER
PAGE - 8

Officer Houck possessed the requisite probable cause to stop Plaintiff. (Dkt. #34, Decl. of Kinerk, Ex. 4). In addition, Plaintiff was eventually convicted by a jury in King County Superior Court for Malicious Mischief in the Second Degree, Failure to Obey a Police Officer, and Violation of the Uniform Controlled Substance Act, Possession of Forty Grams or Less of Marijuana. Plaintiff undisputedly did *not* appeal these convictions. Furthermore, the events at issue in this case which Plaintiff claims give rise to his unreasonable seizure claim are the exact same events that were at issue in the underlying state court proceeding. Thus, Plaintiff could not have been unreasonably seized under the Fourth Amendment because it has previously been established that Officer Houck's stop of Plaintiff was lawful. Granting Plaintiff any form of relief under the Fourth Amendment in the instant case "would necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487.[6] Therefore, Plaintiff's Fourth Amendment claim shall be dismissed.

### 3. Plaintiff's Due Process Claim

Plaintiff also argues that his due process rights were violated because he was prevented from exercising his right to "remain in a public place of his choice and the right to move from one place to another." (Pl.'s Am. Compl., ¶ 29). To support this claim, Plaintiff again claims that he was arrested without a showing of probable cause. (Decl. of Kinerk, Ex. 3). But it has previously been established in the underlying state court proceeding that Officer Houck's stop of Plaintiff was lawful and supported by probable cause. Therefore the rule of law set forth in *Heck* applies with respect to Plaintiff's due process claim because it is fundamentally related to validity of his sentence and conviction. Accordingly, Plaintiff's due process claims will also be dismissed.

### 4. Plaintiff's Fourteenth Amendment Right to Personal Security Claim

Plaintiff also contends that Defendants violated his Fourteenth Amendment right to personal security. However, the Supreme Court has made it clear that "[w]here a particular

---

[6] Notably, Plaintiff does not even address the rule of law set forth in *Heck* in his response.

MEMORANDUM ORDER
PAGE - 9

Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [such] claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). As a result, claims involving pretrial deprivations of liberty are covered and analyzed under the Fourth Amendment. *Albright*, 510 U.S. at 274.

Here, Plaintiff's claims arise entirely out of the events surrounding his arrest by Officer Houck. Therefore Plaintiff's claims arise out of pretrial deprivations of liberty, and should be analyzed under the Fourth Amendment. Moreover, the Court has previously established that *Heck* operates to bar Plaintiff's Fourth Amendment claims. Accordingly, Plaintiff's Fourteenth Amendment right to personal security claim shall also be dismissed.[7]

### D. Collateral Estoppel

Alternatively, the Court also finds that collateral estoppel operates to bar Plaintiff's § 1983 claims. Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *See Montana v. United States*, 440 U.S. 147, 153 (1979) (citation omitted). Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and by preventing inconsistent decisions, encourages reliance on adjudication. *Id.* at 153-154. Moreover, it is well-settled that collateral estoppel applies in the context of a § 1983 claim. *See Allen v. McCurry*, 449 U.S. 90, 104 (1980). *Allen* has made it "clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

In this case, collateral estoppel applies with respect to Plaintiff's § 1983 claims because

---

[7] The Court also notes that Plaintiff failed to address Defendants' request to dismiss Plaintiff's Fourteenth Amendment right to personal security in his response.

MEMORANDUM ORDER
PAGE - 10

those claims require a finding that Officer Houck lacked probable cause to arrest and detain Plaintiff. Furthermore, Plaintiff's argument that Officer Houck lacked probable cause to stop Plaintiff in violation of his constitutional rights has already been litigated and decided. Plaintiff is precluded from raising the same arguments here. Indeed, "nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights." *Allen*, 449 U.S. at 104-105.

Nevertheless, Plaintiff argues that there is new evidence that makes summary judgment inappropriate. Plaintiff specifically indicates that Officer Houck did not send the DUI arrest report to the Washington State Department of Licensing ("DOL") within 72 hours of the arrest, thereby violating RCW 46.20.308(6)(e). (Dkt. #42 at 1). Plaintiff argues that this new evidence supports his allegation that Defendants manufactured the reason for the arrest on the DUI. Plaintiff is in effect arguing that he did not have a full and fair opportunity to litigate his state court claims, thereby preventing the applicability of collateral estoppel. However, Plaintiff has previously challenged the legality of his stop before an administrative judge ("AJ") at the DOL on two separate occasions. (Dkt. #43, Decl. of Kinerk, Exs. 1 and 2). In both hearings, the AJ specifically noted that Plaintiff's challenges were brought to challenge the DUI arrest report signed by Officer Houck. (*Id.*). Furthermore, the AJ clearly determined on both occasions that the DUI Arrest Report complied with the requirements of 46.20.308(6)(e). (*Id.*). Plaintiff appealed this decision to King County Superior Court and the trial judge affirmed the AJ's decision, specifically finding that the DOL's decision pursuant to RCW 46.20.308 was in accordance with the law. (*Id.*, Ex. 3). Thus, Plaintiff's allegations that the DUI arrest report was deficient have already been raised and rejected, thereby barring his claims in this case under the doctrine of collateral estoppel.

In any event, whether the DUI arrest report was timely has no bearing upon Plaintiff's constitutional claims. The foundation of Plaintiff's § 1983 claims is that Officer Houck's arrest and detention of Plaintiff was unlawful. But as repeatedly mentioned above, the legality of

MEMORANDUM ORDER
PAGE - 11

Officer Houck's stop and arrest of Plaintiff has already been resolved in the underlying state court proceeding. As such, Plaintiff's claims under 42 U.S.C. § 1983 that are the subject of Defendants' partial summary judgment motion shall be dismissed.

### E. Plaintiff's Municipal Liability Claims

The Court next turns to Plaintiff's municipal liability claim against Defendants King County and the City of Burien. To establish municipal liability for failing to act to preserve constitutional rights, city policy must cause a constitutional violation. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting) (quoting *Monell*, 436 U.S. at 694). The *Monell* Court emphasized that:

> a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory . . .
>
> Therefore . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 691 and 694 (emphasis in original); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 121 (U.S. 1992). Thus, the Court must first inquire whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-386 (1989).

Similarly, the Ninth Circuit Court of Appeals has explained that a policy is "'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (*per curiam*) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (citations omitted). A policy can be one of action or inaction. *See City of Canton*, 489 U.S. at 388. Under *Canton*, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation

MEMORANDUM ORDER
PAGE - 12

1   committed by one of its employees, even though the municipality's policies were facially
2   constitutional, the municipality did not direct the employee to take the unconstitutional action,
3   and the municipality did not have the state of mind required to prove the underlying violation.
4   *Id.* at 387-89. To impose liability against a municipality for its failure to act, a plaintiff must
5   show: (1) that a city (or other municipality) employee violated the plaintiff's constitutional
6   rights; (2) that the city has customs or policies that amount to deliberate indifference; and (3)
7   that these customs or policies were the moving force behind the employee's violation of
8   constitutional rights. *Gibson v. County of Washoe*, 290 F.3d 1175, 1193-1194 (9th Cir. 2002),
9   *cert. denied*, 537 U.S. 1106 (2003).

10   In the instant case, Plaintiff alleges that King County and the City of Burien instituted a
11   policy or custom in violation of his constitutional rights. The only fact Plaintiff offers in
12   support of this argument is that Officer Houck tasered Plaintiff three times. Plaintiff contends
13   that according to the deposition of another officer, officers are trained to employ the taser only
14   twice. However, nothing in King County's actual training manual indicates that officers are
15   only required to employ the taser twice. (Dkt. #34, Decl. of Gulla, Ex. B). More importantly,
16   Plaintiff offers absolutely no evidence to indicate that the alleged constitutional violations by
17   Officer Houck were caused by virtue of an unconstitutional policy or custom of King County
18   or the City of Burien. Nor does Plaintiff offer any evidence establishing a direct and causal link
19   between a municipal policy or custom and the alleged constitutional deprivation. Under such
20   circumstances, Plaintiff's municipal liability claims against Defendants King County and the
21   City of Burien shall be dismissed.

22   **F. Plaintiff's State Law Negligence Claim**

23   To maintain an action for negligence under Washington law, "a plaintiff must show (1)
24   that the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3)
25   the plaintiff was injured, and (4) the defendant's breach was the proximate cause of the injury."
26   *Doty-Fielding v. Town of South Prarie*, 178 P.3d 1054, 1056 (2008) (citation omitted). Here,
27   the only evidence that Plaintiff points to in support of his negligence claim is a conclusory
28   statement made in response to Defendants' Interrogatory No. 12 that indicates that Defendants

engaged in conduct that was intended "to cover up a systematic misuse of tasers and pepper spray." (Dkt. #34, Decl. of Kinerk, Ex. 3 at 35-36). Such evidence is insufficient because it is a fundamental maxim that conclusory allegations are insufficient to survive summary judgment. *See Anheuser-Busch*, 60 F. 3d at 345. Regardless, Plaintiff completely ignores Defendants' arguments with respect to his negligence claim in his response. Accordingly, Plaintiff's state law negligence claim shall be dismissed.

### G. Plaintiff's Claims Under the Washington State Constitution

Defendants seek dismissal of Plaintiff's claims under the Washington State Constitution. However, outside of merely requesting dismissal of these claims, Defendants do not offer any specific arguments in support of the relief they request. Accordingly, the Court declines to grant summary judgment with respect to these claims.

### III. CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and orders:

(1) "Defendants' Motion for Partial Summary Judgment" (Dkt. #34) is GRANTED IN PART. Specifically, the Court dismisses the following claims contained in Plaintiff's Amended Complaint: (1) violation of the First Amendment right to free speech as applied to the states through the Fourteenth Amendment to the United States Constitution; (2) violation of the Fourth Amendment prohibition against unreasonable seizures; (3) violation of the Fourteenth Amendment due process clause; (4) violation of the Fourteenth Amendment right to personal security; (5) municipal liability of the City of Burien; (6) municipal liability of King County; and (7) negligence.

All other claims shall be resolved at trial.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 7th day of May, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE